UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SUSANNE MANCINELLI,

    Plaintiff

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,

    Defendant

Case No.: 3:21-cv-00273-CSD

**Order**

Re: ECF Nos. 23, 25

Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 23.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 25, 26.) Plaintiff filed a reply in support of her motion. (ECF No. 27.)

After a thorough review, Plaintiff's motion (ECF No. 23) is denied, and the Acting Commissioner's cross-motion to affirm (ECF No. 25) is granted.

## I. BACKGROUND

In February and March of 2017, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning on April 15, 2015. (Administrative Record (AR) 195-202.) The applications were denied initially and on reconsideration. (AR 120-123, 127-129, 132-134.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 135.) ALJ William Kurlander held a hearing on April 15, 2020. (AR 38-69.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken

from a vocational expert (VE). On June 3, 2020, the ALJ issued a decision finding Plaintiff not disabled. (AR 14-32.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 2-6.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff had a spinal fusion surgery in 2008.  She claims she is disabled due to chronic low back pain and pain radiating down her right leg since her surgery. Plaintiff argues that the ALJ did not consider her subjective complaints in accordance with the proper legal standard. The Acting Commissioner argues the ALJ properly evaluated Plaintiff's subjective symptom testimony and reasonably concluded her allegations of work-preclusive limitations were not entirely consistent with the record.

## II. STANDARDS

**A. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is

denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)(internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

testimony of a VE or by reference to the Grids.[1] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

---

[1] "[The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through March 31, 2021, and she had not engaged in substantial gainful activity since the alleged onset date of April 15, 2015. (AR 21.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: back disorder, asthma, chronic obstructive pulmonary disease (COPD), obesity, mood disorder, and depression. (AR 21.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 22.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform medium work except she can never crawl or climb ladders, ropes and scaffolds; she can occasionally climb ramps or stairs; she can frequently perform other postural activities; she can occasionally be exposed to atmospheric irritants, such as dust, fumes, odor and gases; she can never work at exposed heights; she can perform routine and repetitive work; she is expected to be off-task five percent of the time; and she can no more than occasionally interact with coworkers, supervisors and the general public. (AR 24.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 29.)

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cleaner, housekeeper and laundry worker. (AR 31.) As a result, the ALJ found Plaintiff not disabled from April 15, 2015, through the date of the decision. (AR 31.)

**B. Subjective Symptom Testimony**

**1. Evaluating Subjective Symptom Testimony**

Evaluating a claimant's subjective symptom testimony "becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P).[2]

---

[2] SSA previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

7

"Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

There is a two-step test for evaluating a claimant's subjective symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original).

**2. Plaintiff's Testimony**

At the time of the hearing, Plaintiff was 55 years old. (AR at 45.) She had a spinal fusion surgery, and since that time has had lumbar spine pain which radiates to her right leg. (*Id.*) She also has a history of depression. (*Id.*)

She lives in Spring Creek, Nevada, with her long-term boyfriend of 30 years and her adult daughter. (AR 47, 58.) Plaintiff completed up to ninth or tenth grade, and she does not have a GED. (AR 48.) Her last full time job was as head cashier at Home Depot. (AR 49-50.)

Plaintiff has gained 70 pounds since 2015, which she attributes to her condition getting worse and not being able to do as much as she used to while on pain medications. However, she testified she had been off her pain medications since 2017. (AR 50-52.) She uses marijuana once

a day to help her pain, but she does not like the effects it has on her. (AR 52.) She takes muscle relaxers twice a day, and they help a little bit. (AR 59.) She takes Prozac for her depression and anxiety. (AR 62-63.) She smokes a pack of cigarettes a day. (AR 63.) She has a hard time sleeping at night due to her leg twitching. (AR 52.) Plaintiff testified that she could stand for about a half an hour before it becomes too painful; she can walk for about ten minutes before needing to stop to take a break, and she can lift ten pounds, at most. (AR 60.)

She tried lifting weights for exercise, but she could not do the movements on the (video) tape. She got a treadmill, but before her hearing she lost her balance and fell. She continued to use the treadmill, going very slowly and holding onto the bars. (AR 54.) She does not use any assistive devices or braces. (AR 56.)

When Plaintiff does things during the day, she will do a little bit and then will go and sit or lay down, and then will do something else. (AR 53.) She has two dogs and she feeds them, but her daughter takes them outside. (AR 54.) She does some dishes, makes dinner at night, and cleans up the house, but she has to sit down in between doing these tasks. (AR 61.) She has a driver's license, but her boyfriend does not want her to drive because on one occasion, she almost drove into a ditch because she was tired from her medications. (AR 58-59.)

She received notice to attend a consultative examination, but she did not remember until the day of the appointment, and by that time it was too late for her to get there. (AR 49.)

She used to go to therapy, but not since her therapist quit and moved to another company two or three years prior. It was hard for her to talk to her therapist, and she does not have a way to get to the therapist unless her daughter takes her. (AR 56-57.)

### 3. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but the ALJ concluded that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record, including the objective medical evidence, her treatment history and her activities of daily living. (AR 25.)

Plaintiff argues the ALJ failed to properly consider her subjective symptom testimony in assessing her disability claim because none of the ALJ's asserted reasons meet the "clear and convincing" standard and are based on mischaracterizations of the record. The Acting Commissioner, on the other hand, argues that the ALJ did not totally disbelieve Plaintiff's testimony, but appropriately limited Plaintiff to a medium work level.

First, the ALJ said that while Plaintiff was complaining of lower back pain radiating down her leg since 2008, she continued to work at, or very near, substantial gainful activity levels through 2014. (AR 26.)

Plaintiff contends the ALJ improperly contrasted her work history through 2014 with her allegations of back pain because she did not allege disability until 2015. Plaintiff argues the fact that she worked prior to alleging disability actually supports her allegation that her condition has declined over time. Additionally, she points out that she was on heavy medications during this period.

The Acting Commissioner argues that this was merely a history of the impairments at issue, and the ALJ then proceeded to discuss the same impairments during the period of alleged disability.

The court agrees with Plaintiff that the fact that she worked through 2014 is not a basis for rejecting her subjective symptom testimony when she does not allege her disability began until 2015. However, it is also true that the ALJ went on to discuss Plaintiff's alleged impairments during the period of disability.

Second, the ALJ recounted that Plaintiff underwent lumbar fusion surgery in 2008, and briefly engaged in physical therapy, chiropractic and injection therapies after surgery, and reported experiencing relief with past physical therapy, but she did not continue to engage in such treatment. (AR 26.)

Plaintiff argues the ALJ improperly assessed Plaintiff's conservative therapy because this treatment was prior to her alleged onset date.

Plaintiff is correct that her course of physical therapy followed her 2008 lumbar fusion surgery; however, she did report relief from that therapy (*see* AR 607). When she saw Dr. Walker in July of 2016, he recommended a new MRI and physical therapy for her. (AR 365.) In addition, when she saw APRN Sarah Lino in 2019, Lino also referred her to physical therapy, but the record contains no evidence that she engaged in this recommended therapy. (AR 610.) Nor does the record contain a reason why Plaintiff did not follow this recommended course of treatment. Therefore, this is a valid, clear and convincing reason supporting the ALJ's evaluation of Plaintiff's subjective symptom testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) ("A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to … follow a prescribed course of treatment.").

Third, the ALJ noted that Plaintiff was referred back to Sierra Neurosurgery Group (with Dr. Blake) in March 2017, due to continued complaints of back and leg pain. The ALJ pointed out that Plaintiff reported no leg weakness, numbness, or tingling, but did report a "'nervous'

twitch of her legs,' which makes her 'unable to sit or stand still.'" The ALJ discussed that Plaintiff was noted to have a normal gait, station and coordination, normal movement and full (5/5) motor strength of all extremities." In addition, the ALJ pointed out that Dr. Blake reviewed Plaintiff's imaging and did "'not see anything on the scan that is abnormal.'" (AR 26.)

Plaintiff asserts that the ALJ mischaracterized the record by failing to reference "*what was normal*" in the examination by Dr. Blake. Plaintiff contends that Dr. Blake said it would be difficult for her to manage her pain in Elko, and it would be unreasonable for her to travel to Reno for medications. In addition, Plaintiff asserts the ALJ did not discuss Plaintiff's decreased ankle and knee strength at that visit. Plaintiff argues that the ALJ cannot mischaracterize the record, and the fact that Plaintiff had one surgery and cannot have another is not a clear or convincing reason to discount her testimony.

When Plaintiff saw Dr. Blake on March 3, 2017, she had been taking Percocet for the last few months, prescribed by her primary care physician, Dr. Patel, and Dr. Blake noted Plaintiff had taken chronic opioids since her spine surgery (in 2008). He said that she had no leg weakness, numbness or tingling, but she did have a nervous twitch of the leg that made her unable to sit or stand still. She reported that opioids, muscle relaxants, injections, and physical therapy had helped temporarily. She was ambulating normally, and had normal motor strength and tone, with no tenderness to palpation over the SI joint. She had a normal gait and station. She had 5/5 strength bilaterally *except* her strength was 1/5 at the ankles and 2/5 at the knees, both bilaterally. Dr. Blake reviewed Plaintiff's MRI, which showed mild degenerative disc disease at multiple levels without central or foraminal stenosis to indicate radiculopathy. Dr. Blake noted that Plaintiff had recently been evaluated by Dr. Leppia, who reviewed the updated lumbar spine imaging and found there was nothing to offer her surgically. Dr. Blake also reviewed the updated

imaging and did "not see anything on the scan that is abnormal." Dr. Blake commented that Plaintiff lived in Elko, and logistically speaking, it would be difficult to manage her pain locally (in Elko). He said it would be unreasonable to ask her to travel to Reno monthly for medication prescriptions, and so he encouraged her to continue to get her medications prescribed through her primary care physician. He also recommended that she not escalate her dosage. Finally, he found she may benefit from a neurology consult since she was unable to stand still and had somewhat of a nervous twitch in her legs and jaw. (AR 376.)

The ALJ did omit the fact that Plaintiff was found to have 1/5 strength in the ankles and 2/5 strength in the knees, However, it remains that Dr. Blake found she ambulated normally, had normal motor strength and tone, her MRI showed only mild degenerative changes, there was nothing to offer surgically, she could continue to obtain her medications from her primary care provider in Elko, and she would benefit from a neurological consultation.[3] Moreover, the ALJ went on to note that when Plaintiff was seen in February 2018, she reported moderate symptoms that were well controlled. The ALJ discussed that Plaintiff complained of right knee pain, but her right knee imaging was normal. The ALJ also pointed out that the record was substantially lacking in additional treatment notes related to her alleged severe musculoskeletal issues for a period of more than 20 months. (AR 26.) This is accurate. Plaintiff established care with APRN Lino in February of 2018, but saw her only twice in 2018, and the notes concerning her visits and examination during that timeframe were normal (or at least nothing of significance was noted) insofar as her back and right leg pain were concerned. (AR 592-95, 598-99.)

---

[3] This ultimately proved to be problematic because apparently Dr. Patel's practice was shut down related to a prosecution for overprescribing opioids.

The ALJ correctly pointed out that the objective medical findings did not support Plaintiff's alleged limitations *to the extent* she claimed. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis original). ALJ's may properly rely "on any *contradictions* between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony." *Id*. at n. 1 (emphasis original).

Fourth, the ALJ said that Plaintiff admitted she was not compliant with her diet and had not been exercising. Plaintiff argues that the ALJ mischaracterized the record because he omitted explanations for her noncompliance.

The ALJ stated that Plaintiff's musculoskeletal impairments were likely affected by her weight gain. Prior to 2019, her body mass index (BMI) was 24, which was a normal rating, and 29, which is overweight. She then experienced some "drug-induced" weight gain related to a change in her psychotropic medication, and she had a BMI of 30.89 in September of 2019. The ALJ pointed out that although Plaintiff was advised to increase her activity and engage in weight management, she admitted she was not compliant with her diet and had not been exercising. (AR 27.)

Plaintiff claims the ALJ omitted reference to Plaintiff's testimony that she did a workout video over the holiday months, but she ended up getting sick and had two courses of antibiotics, and was not able to exercise. In addition, the ALJ omitted the fact that Plaintiff started exercising, but then fell (while using her treadmill). Plaintiff similarly argues that the ALJ omitted reference to Plaintiff's explanation that she was eating excess fast food because her stove

was broken after her boyfriend called her a "fat pig" and threw a table at the stove, damaging the stove.

Again, "[a] claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to … follow a prescribed course of treatment." *Trevizo*, 871 F.3d at 679 (internal quotation marks and citation omitted). When, however, the ALJ does not address the proffered reasons (or the believability of those reasons) for not following a prescribed course of treatment, the ALJ errs. *Id*. Here, the ALJ did not address Plaintiff's explanations that she was sick, which prevented her from exercising, and that she fell while using the treadmill, or that she had difficulty maintaining her diet when her stove was damaged.

While the ALJ did not reference explanations in the record for Plaintiff's failure to adhere to the recommended diet and exercise plan, the ALJ did nevertheless provide additional reasons for discounting her subjective symptom testimony in this regard. The ALJ pointed out that despite her rising BMI, her November 2019 MRI showed only mild degenerative changes without visualized nerve root impingement, and at that time she was neurovascularly and sensorily intact, with a full range of motion and full motor strength in all extremities, and ambulated with a normal gait. (AR 27.)

Fifth, the ALJ included a notation that in November of 2019, Plaintiff presented with a normal physical examination. (AR 27.)

Plaintiff asserts that this is a mischaracterization of the record because this was an intake examination when Plaintiff presented to the emergency department after an overdose. While Plaintiff may have presented to the emergency department related to an overdose, the record nevertheless contains full examination notes indicating Plaintiff had full motor strength and

normal gait. (AR 520.) The court will not substitute Plaintiff's or its own judgment regarding the interpretation of this record for the ALJ's.

Sixth, Plaintiff contends the ALJ incorrectly focused on her smoking habit, when she was not alleging disability due to COPD or breathing issues. The ALJ noted that despite her severe respiratory impairment, Plaintiff persisted in smoking a pack of cigarettes a day. (AR 27.) While Plaintiff may not have claimed disability due to her COPD or breathing issues, the Acting Commissioner is correct that in assessing a claimant's RFC, the ALJ considers all impairments in determining how they limit the claimant's capacity for work. Therefore, it was appropriate for the ALJ to consider this impairment in assessing Plaintiff's subjective symptom testimony to determine her RFC.

Seventh, Plaintiff argues the ALJ improperly found her testimony was inconsistent with her activities of daily living. She asserts that the fact that she could do some household chores is not determinative of disability, and the ALJ ignored caveats placed on these activities.

The ALJ found that Plaintiff's reported activities of daily living and demonstrated abilities additionally support a finding she is capable of work with the assessed limitations. The ALJ discussed that Plaintiff admitted she could drive a motor vehicle and has a driver's license; she maintained a 30-year relationship with her significant other, with whom she lives along with her daughter and two dogs; and, Plaintiff admitted she often prepares meals and can perform some household chores. (AR 28.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted). The finding regarding her relationship with her significant other

and her living relationship correlates to the ALJ's finding Plaintiff could have, at most, occasional interaction with coworkers, supervisors, and the general public.

To the extent the ability to drive is used to support a finding concerning Plaintiff's other abilities to perform medium work, the ALJ did not address Plaintiff's testimony that her boyfriend does not like her to drive because on one occasion she almost drove into a ditch because she was tired from her medications.

The ALJ also found her reports that she often prepares meals and can perform some household chores supported the conclusion she was capable of medium work with the assessed limitations. "House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasionally shopping outside the home, are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (citation omitted). "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Trevizo*, 871 F.3d at 682 (quotation marks and citation omitted). "[O]nly if [the] level of activity [was] inconsistent with [Plaintiff's] claimed limitations would these activities have any bearing on [her] credibility." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (internal quotation marks and citation omitted). In failing to explain how these activities translated to the ability to perform in a work-environment, the ALJ erred in utilizing this as a basis to discredit Plaintiff's subjective symptom testimony.

Eighth, Plaintiff asserts that the ALJ "create[d] a number of confusing and inexplicable lines of dialogue in the hearing." For instance, the ALJ asked leading questions regarding her marijuana use, and inquired as to whether she used methamphetamine when there was no reference to illegal drug use in the record. Plaintiff also criticizes the ALJ's line of questioning

regarding therapy. Plaintiff does not argue, however, that the ALJ gave improper reasons for discounting Plaintiff's subjective symptom testimony on the topics of marijuana use or therapy.

Finally, Plaintiff argues that the ALJ improperly implied Plaintiff was malingering when her provider APRN Lino opined she did not appear to be malingering. The ALJ pointed out that there was one occasion when Plaintiff saw Lino where she exhibited depressive symptoms, but on the other occasions she saw Lino, she had normal mental status exam findings. In addition, the ALJ pointed out that the musculoskeletal findings by this provider were normal *overall*. Importantly, the ALJ did not include a finding that Plaintiff was malingering.

In *Carmickle v. Commissioner of Social Security Administration*, 533 F.3d 1155, 1162 (9th Cir. 2008), the Ninth Circuit found some of the ALJ's reasons for rejecting the claimant's subjective symptom testimony were valid, while some were invalid. As such, the court had to determine whether the ALJ's reliance on the invalid reasons was harmless error. *Carmickle,* 533 F.3d at 1163 (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)). The relevant inquiry is "whether the ALJ's decision remains legally valid, despite such error." *Id*. "So long as there remains 'substantial evidence supporting the ALJ's conclusions [as to the subjective symptom testimony]' and the error 'does not negate the validity of the ALJ's ultimate" conclusion, then the error is deemed harmless and does not warrant reversal. *Id*. (citing *Batson,* 359 F.3d at 1197). In *Batson*, the court concluded the ALJ erred in relying on one of several of the reasons to reject the claimant's subjective symptom testimony, but that error was harmless "because the ALJ's remaining reasoning *and ultimate [subjective symptom testimony] determination,* were adequately supported by substantial evidence in the record." *Id*. (emphasis original).

In *Carmickle,* the court likewise found the error was harmless despite the errors because "[t]he ALJ did not wholly reject [the claimant's] allegations" and the RFC assessment was largely consistent with his testimony, and to the extent the ALJ rejected the claimant's allegations regarding the ability to lift and change positions, the ALJ's findings were based on substantial evidence in the record. *Carmickle*, 533 F.3d at 1163.

Here, the court similarly finds that the ALJ's error is harmless because ALJ did not wholly reject the Plaintiff's testimony, and the remaining reasoning and ultimate subjective symptom testimony is supported by substantial evidence. The record as a whole does not support Plaintiff's allegations that her symptoms are completely disabling. Therefore, the ALJ's decision is affirmed.

### IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 23) is **DENIED**; and the Acting Commissioner's cross-motion to affirm (ECF No. ECF No. 25 ) is **GRANTED.**

The Clerk shall enter **JUDGMENT** accordingly.

**IT IS HEREBY ORDERED.**

Dated: January 20, 2023

_____
Craig S. Denney
United States Magistrate Judge